WHITE STAR BUS LINE, INC., demandante y apelante, *v.* HON. ROBERTO A. SÁNCHEZ, en su carácter de Comisionado Interino del Interior de Puerto Rico, querellado.

Núm. 8464.—*Sometido:* Diciembre 15, 1941. *Resuelto:* Enero 23, 1942.

*C. Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelante; *Hon. Procurador General George A. Malcolm* y *A. E. Franco Cabrero, Subprocurador Auxiliar,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

En octubre 17 último la White Star Bus Line, Inc., una corporación doméstica dedicada al transporte de pasajeros dentro de los municipios de San Juan y Río Piedras, mediante franquicia concedídale en 1927, acudió a la Corte de Distrito de San Juan y le pidió que expidiera un auto perentorio y definitivo de *injunction,* prohibiendo al Comisionado del Interior retirar las tablillas de número de todas y cada

una de las guaguas de la demandante por medio de las cuales realiza su negocio.

Los hechos en que basó su petición son substancialmente los que siguen:

La demandante posee y opera 225 ómnibus conocidos por guaguas en el transporte de pasajeros entre San Juan y Río Piedras. La ley núm. 75 de 1916 (pág. 144), tal como enmendada, obliga a todos los porteadores públicos a pagar anualmente ciertos derechos por licencias y tablillas de número, tablillas que deben ser colocadas en sitio visible en cada vehículo antes de poder transitar públicamente.

Para dar cumplimiento a la última enmienda de la ley durante el año 1941-42, la demandante se comunicó con el Comisionado del Interior de Puerto Rico a fin de que le informara cuánto debía pagar para obtener sus tablillas y de acuerdo con el informe que recibiera antes de julio 20, 1941, pagó al dicho Comisionado $6,750 por sus 225 guaguas, entregándole el Comisionado las correspondientes tablillas que se colocaron en los vehículos, y el transporte continuó.

Así las cosas, el Comisionado en septiembre 5, 1941, varió su opinión en el sentido de que de acuerdo con la enmienda de la ley procedía el pago de un derecho adicional de $25 por cada vehículo, y así lo comunicó a la demandante que entró en conversaciones con él y obtuvo de él que mediante la prestación de una fianza dejara el cobro en suspenso hasta que el asunto fuera resuelto por los tribunales.

Eso no obstante, el Comisionado hizo caso omiso del convenio y en octubre 16, 1941, exigió a la demandante por escrito el pago incondicional y total de la diferencia, concediéndole un día para efectuarlo, amenazándola con retirar las tablillas de sus guaguas si así no lo hacía.

Sostuvo la demandante que tal proceder por parte del Comisionado era arbitrario y sin autoridad de ley, y le pidió a la corte que actuara prontamente en el sentido indicado.

El Comisionado del Interior contestó todos y cada uno de los hechos de la demanda, explicando su posición en el

sentido de que al darse cuenta de la equivocación en que incurriera al informar primeramente a la demandante, la requirió para que pagara la suma que debía satisfacer de acuerdo con la ley—$55 en vez de $30 por cada vehículo—, teniendo con sus representantes varias conferencias, y no pudiendo llegar a un acuerdo le dió un día para el pago con indicación de que procedería al retiro de las tablillas de no verificarlo.

Fué el pleito a juicio y la corte lo resolvió por sentencia de noviembre 3, 1941, anulando la orden de entredicho que dictara, cancelando la fianza prestada para obtenerla y declarando sin lugar en definitiva la demanda, con costas, sin incluir honorarios de abogado.

La demandante apeló de esa sentencia para ante este Tribunal y el 5 de noviembre, 1941, pidió a la corte que expidiera un auto de injunction en auxilio de su jurisdicción a fin de evitar que la arbitrariedad se cometiera antes de decidirse el caso por sus méritos, ya que el Comisionado del Interior, vista la sentencia de la corte de distrito,—no obstante la apelación interpuesta—la había requerido nuevamente de pago para hacerlo a más tardar a las doce del día 5 de noviembre, con la amenaza de que de no verificarlo procedería a arrancar las tablillas de las guaguas.

Vista la urgencia del caso, tratándose de la ejecución de una orden que podría entorpecer en gran manera la continuación de un servicio público y exigiendo una garantía plena del pago de la totalidad de la reclamación envuelta, esta corte ordenó que se requiriera al Comisionado para que compareciera ante ella cinco días más tarde a exponer las razones que tuviera para que no se decretara el injunction solicitado, quedando entre tanto en entredicho.

La fianza exigida fué prestada y la orden expedida. Contestó el Comisionado y ambas partes fueron oídas ampliamente, acordando la corte dejar vigente el entredicho a condición de que la transcripción en el caso del injunction apelado fuera radicada en o antes de diciembre 1, 1941, acom-

pañada del alegato del apelante, a fin de que la vista del recurso pudiera celebrarse, como se celebró en efecto, el quince de dicho mes para cuya fecha quedó señalada.

Está, pues, ahora ante nosotros el caso en su totalidad.

■■ En la opinión de la corte de distrito que sirve de base a la sentencia apelada, se pierde de vista la verdadera cuestión envuelta que está reducida a determinar si el Comisionado del Interior podía o no proceder por sí mismo o por sus agentes a arrancar las tablillas de las guaguas que transitaban con ellas adheridas a virtud del pago de la cantidad que él mismo indicó primeramente que debía pagarse de acuerdo con la ley. A esa sola cuestión limitaremos nuestro estudio.

El inciso (h), del artículo 3 de la ley núm. 75 de 1916, como enmendada por la ley núm. 9 de 1926 (pág. 23), Legislatura Extraordinaria de ese año, prescribe:

"Artículo 3.—(h) El Comisionado del Interior podrá suspender o cancelar la licencia, y ordenar que se ocupen las tablillas de cualquier vehículo de motor, destinado a servicio público, cuando solamente obtuvo licencia y tablillas para ser destinado a servicio privado; y podrá cancelar la licencia de cualquier vehículo de motor destinado a servicio público, cuando, a su juicio, el automóvil está traficando en condiciones tales que constituya una amenaza para la seguridad pública."

Ésa es la única autoridad de ley que se invoca por el Comisionado para actuar en la forma en que indicó que actuaría en este caso si la peticionaria no pagaba. ¿Es suficiente? Veámoslo.

Sólo en dos casos puede el Comisionado ordenar que se ocupen las tablillas de cualquier porteador público, a saber, 1, cuando obtenidas para servicio privado, se destina el vehículo a servicio público, y 2, cuando el vehículo trafica en condiciones tales que constituye una amenaza para la seguridad pública.

El caso de autos no está comprendido dentro de la letra de la autorización. Eso lo admite el propio Comisionado,

pero sostiene que siendo el espíritu de la autorización en el primer caso la evitación del fraude, debe extenderse a éste que tiene el mismo propósito.

No estamos conformes. La autorización es de interpretación estricta. Se concedió para casos específicos y no es susceptible de extensión. Además, la actuación de la peticionaria no lo fué con engaño. No solicitó una licencia que costaba menos para engañosamente dedicarse a un negocio que exigía otra que costaba más, en perjuicio del erario público. Procedió a las claras y pagó lo que se le dijo que tenía que pagar y a virtud de ese pago fué que se le entregaron las tablillas que colocó en sus guaguas.

Se insiste, sin embargo, en que éste no es un caso propio de injunction porque la misma ley que autoriza el remedio—Ley para definir el Injunction . . . Leyes de 1906, pág. 81—expresamente dispone que el auto no podrá expedirse, entre otros casos, "para impedir el cumplimiento de un estatuto público por funcionarios de la ley, en beneficio del público."

Ésa es la ley, en efecto, pero ella no quiere decir que cuando el funcionario trata de utilizar para cumplir el estatuto un medio que no está autorizado por la ley no puede recurrirse al injunction para impedir su actuación.

Como se dijo en el curso de la opinión de la Corte Suprema de los Estados Unidos, emitida por el Juez Peckham en el caso de *American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94, 108:

"Que la conducta de la Oficina de Correos es parte del departamento administrativo del Gobierno es completamente cierto, pero ello no siempre ni necesariamente priva a las cortes de jurisdicción para conceder reparación (*relief*) a una parte perjudicada por cualquier acción entablada por el jefe o un funcionario subalterno de ese departamento no autorizado por el estatuto bajo el cual asume actuar. Los actos de todos sus funcionarios deben estar justificados por alguna ley, y en caso de que un funcionario viole el estatuto en perjuicio de alguna persona, las cortes generalmente tienen jurisdicción para conceder reparación."

Y como se resolvió por la Corte Suprema de North Dakota interpretando un estatuto igual al nuestro en el caso de *State ex rel. Ladd* v. *District Court*, 15 L. R. A. (N.S.) 331, 334:

". . . La base en que descansa la excepción previa del relator, interpuesta en la corte de distrito, y su solicitud para que se expida el auto en esta corte, consiste en que las cortes de este estado carecen de autoridad para conocer de una acción cuyo fin es evitar que un funcionario público ponga en vigor un estatuto que él alega estar cumplimentando para beneficio público. Él interpreta .el párrafo 4to., sección 6631, Est. Rev. 1905, como una prohibición a las cortes de conocer de acciones de esta naturaleza. Ese estatuto lee como sigue: 'No se expedirá un injunction . . . (4) para impedir que oficiales de la ley pongan en vigor un estatuto público para el beneficio público. . .' No interpretamos en esa forma esta disposición del Código. Más bien la interpretamos en el sentido de significar que, cuando se ventila una acción cuyo fin es impedir que un funcionario dé cumplimiento a un estatuto, éste no será obstaculizado una vez se compruebe que está poniendo en vigor el estatuto en forma legal y corriente y para. el beneficio público. Si actúa sin autoridad para ello o excediéndose en la misma, no .está haciendo cumplir un estatuto público. Debe existir alguna forma de proteger al público y la propiedad contra la ilegal aplicación de estatutos por funcionarios públicos; y creemos que no era el propósito de la disposición estatutaria a que hemos hecho referencia el impedir que las cortes, al conocer de acciones de injunction, investiguen la legalidad de actos oficiales."

*Debe revocarse la sentencia recurrida y en su lugar dictarse otra ordenando la expedición de un auto de injunction prohibiendo al Comisionado del Interior arrancar por sí mismo o por medio de sus agentes o empleados las tablillas de número de cada una de las guaguas de la demandante, sin que ello implique que dicho funcionario no tenga derecho a cobrar de la demandante la cantidad total que ordena el estatuto según su criterio, acudiendo a las· cortes de justicia si necesario fuere, con las costas de ley pero sin incluir en ellas honorarios de abogado.*

El Juez Asociado Sr. Snyder no intervino.