Miguel Nieves, demandante y apelante, *v.* William D. López, en su carácter de Comisionado Interino del Trabajo, demandado y apelado.

Núm. 8553.—*Sometido:* Diciembre 18, 1942. *Resuelto:* Enero 19, 1943.

*Hernán Franco*, abogado del apelante; *Hon. Procurador General Interino M. Rodríguez Ramos, R. García Cintrón, Procurador General Auxiliar* y *Angel E. Franco Cabrero, Subprocurador Auxiliar*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

La sección 1 de la Ley núm. 73 "Regulando el trabajo de mujeres y niños, y protegiéndolos contra ocupaciones peligrosas" aprobada el 21 de junio de 1919 (pág. 497), según quedó enmendada por la Ley núm. 28 aprobada el 24 de abril de 1930 (pág. 267), dispone lo siguiente:

"Sección 1.—A ninguna mujer se le empleará o se le permitirá que trabaje en ninguna clase de ocupación lucrativa, en el período comprendido entre diez de la noche y las seis de la mañana, ni más de ocho (8) horas durante cualquier día natural, ni más de cuarenta y ocho horas durante cualquier semana; *Disponiéndose*, sin embargo, que la limitación de ocho (8) horas puede ser ampliada a un período que no exceda de nueve (9) horas durante cualquier día natural, a condición de que a toda mujer de ese modo empleada

·a jornal, por más de ocho (8) horas durante cualquier día natural, se le pagará por el trabajo que haga durante tal período extra a un tipo que sea doble del que se haya pagado en las ocho (8) horas ·de trabajo precedentes; pero en ningún caso ninguna mujer será empleada ni se le permitirá que trabaje más de cuarenta y ocho (48) horas durante cualquier semana; *Disponiéndose,* que en la industria de empacar, enlatar o refrigerar frutas o· vegetales cualquier mujer, mayor de 16 años, que no esté en estado de embarazo, podrá ser empleada durante las horas de la noche, siempre que no haya trabajado durante el día, y por un período no mayor de ocho horas ni más de 48 horas durante la semana.

"Esta sección no será aplicable a mujeres mayores de diez y seis ·años, que estuvieren empleadas como *telefonistas,* telegrafistas, artistas, enfermeras, sirvientas." (Bastardillas nuestras.)

El apelante en este caso solicitó de la corte inferior expidiera un auto de *injunction* contra el Comisionado Interino del Trabajo para que se abstenga, por sí o por medio de sus subalternos, de intervenir en su negocio y de iniciar procedimientos criminales contra él, alegando que los mujeres que emplea en el mismo son mayores de diez y seis años, telefonistas, y que, por lo tanto, están excluídas expresámente de la prohibición contenida en la ley antes citada. Los hechos alegados en la petición, según los sintetiza la corte inferior en su resolución y acepta el apelante como correctos, son los siguientes:

"Que el demandante es dueño de una estación radiotelefónica radicada en la calle Hipódromo Núm. 2 de Santurce, Puerto Rico, y de diez máquinas fonográficas conocidas por "velloneras", que están instaladas en diez diferentes sitios comerciales de Santurce cada una y conectadas, por medio de circuitos telefónicos arrendados a la Compañía del Teléfono de Puerto Rico, a la estación del demandante radicada en la calle Hipódromo, la que en adelante llamaremos 'la estación'; teniendo invertidos en dicho equipo y discos fonográficos $3650; que cuando una persona desea oír un disco fonográfico en una de las 'velloneras', inserta una moneda en la misma y al así hacerlo se enciende una luz roja en un 'panel de control' que existe en la estación y que es operado por una de las cuatro mujeres telefonistas, mayores de dieciocho años, empleadas por el demandante para operar la estación, las que se turnan entre sí de día y de noche y perciben

un salario de $30 mensuales las que trabajan de día, y de $35 mensuales las que trabajan de noche; que la referida luz roja indica a la telefonista que en una de las diez 'velloneras' hay una persona que interesa la trasmisión de un disco fonográfico desde la estación, y entonces dicha telefonista, desde la estación, trasmite el disco que le han solicitado; que dicho negocio le produce al demandante un ingreso neto de alrededor de $350 mensuales; que el demandado y sus subalternos se personaron en la estación el día 7 del próximo pasado mes de julio y, amparándose en las disposiciones de la Ley núm. 73 aprobada por nuestra Asamblea Legislativa en 21 de junio de 1919, le prohibieron, bajo amenazas de procedimientos criminales, emplear mujeres telefonistas después de las diez de la noche; y que el demandado se propone e intenta llevar a cabo dichas amenazas, así como también intenta y se propone cerrar el negocio del demandante, lo que expondría a éste a defenderse de una multiplicidad de procedimientos criminales que le causarían daños irreparables y destruirían su mencionado negocio.''

Puesto en entredicho el demandado radicó una excepción previa alegando que la petición no aducía hechos suficientes y contestó. Practicada prueba por el demandante y oídas las partes la corte inferior dictó resolución dejando sin efecto la orden de entredicho y declaró sin lugar la petición por el fundamento de que ''No habiéndose alegado ni probado que el estatuto a virtud del cual el demandado ha de instituir procedimientos criminales contra el demandante es inconstitucional y que por tal motivo la propiedad del demandante ha de sufrir daños irreparables, no cae este caso dentro de la excepción a la regla general de que las cortes de equidad carecen de jurisdicción para evitar la prosecución y castigo de delitos.''

Esta conclusión de la corte inferior está sostenida por amplia jurisprudencia, y es correcta, pero sólo cubre y puede ser aplicada a los hechos alegados en la petición que se refieren a la iniciación de procedimientos criminales por el demandado en contra del demandante. Dicha petición, sin embargo, expone otros hechos que no caen bajo la doctrina expuesta por la corte inferior, o sea la alegación contenida

en el hecho 10 de que el demandado "intenta y propone cerrar el negocio del demandante" que también está cubierta bajo el hecho 12 cuando se alega que "las actuaciones, actos y amenazas del demandado y sus subalternos hacia el demandante *constituyen actos ilegales y transgresiones de ley,* invocando el demandante la excepción que especifica la referida Ley número 73 del año 1919 exentando de la aplicación de la misma a las telefonistas del demandante." (Bastardillas nuestras.)

En casos apropiados, una corte de equidad tiene jurisdicción para impedir que un funcionario público actúe en forma ilegal, sin que sea necesario alegar ni probar que la ley bajo la cual actúa sea inconstitucional. El caso más reciente resuelto por esta Corte Suprema en el que se reconoce la excepción a la prohibición estatutaria de que no se expedirá un auto de injunction para impedir el cumplimiento de un estatuto público por funcionarios de la ley, en beneficio del público, es el de *White Star Bus Line, Inc.* v. *Sánchez,* 59 D.P.R. 748, en el que se resolvió que puede recurrirse al remedio de injunction cuando el funcionario trata de utilizar, para cumplir el estatuto, un medio que no está autorizado por la ley, siempre que la petición alegue los hechos requeridos para acudir a la jurisdicción de equidad. En casos de esta naturaleza no hay envuelta cuestión alguna de inconstitucionalidad de la ley sino si la ley autoriza o no la actuación del funcionario. Como se dijo en el caso de *State ex rel. Ladd* v. *District Court,* 15 L.R.A. (N.S.) 331, 334, citado en el de *White Star Bus Line,* supra, "Si (el funcionario) actúa sin autoridad para ello o excediéndose en la misma, no está haciendo cumplir un estatuto público." Véase 28 Am. Jur., *Injunctions,* sec. 166; *Cf. Adams* v. *Nagle,* 303 U. S. 532.

Empero, la corte inferior limitó el alcance de su resolución, según hizo constar, por el hecho de que: "No hay prueba de que el demandado haya amenazado al demandante con cerrarle su negocio, tal como se alega en la demanda".

Del examen que hemos hecho de la prueba presentada por el demandante la conclusión de la corte es enteramente correcta, y, no habiéndose probado esa alegación de la demanda el caso cae de lleno dentro de la doctrina general de que las cortes de equidad carecen de jurisdicción para impedir un proceso criminal, pues no conteniendo la demanda en este caso alegación alguna atacando la constitucionalidad de la ley y que, por dicho motivo, los derechos de propiedad del demandante hayan sido amenazados y como consecuencia sufriría daños irreparables a menos que se impida al demandado cumplir con dicha ley, no es de aplicación esta única excepción a la mencionada regla general. 28 Am. Jur., *Injunctions*, secs. 233–235.

■■ En el hecho 10 de la demanda lo único que se alega es que "el demandado se propone e intenta llevar a cabo dichas amenazas *así como también intenta y propone cerrar el negocio del demandante, y si esto se le permitiera al demandado,* expondría al demandante a defenderse de una multiplicidad de procedimientos criminales que le causarían daños irreparables y acabarían con destruir el negocio del demandante, cuyos daños serían difíciles de determinar . . ." No se alegan hechos que, por sí mismos y no a virtud de la conclusión legal, justifiquen los daños irreparables alegados. Véase *Peña* v. *Vergne de la Concha,* 37 D.P.R. 285; *Benítez Rexach* v. *Municipio,* 42 D.P.R. 107.

Somos de opinión que la demanda en este caso debió haberse desestimado por no alegar hechos suficientes constitutivos de causa de acción en equidad, según la regla establecida en nuestra jurisprudencia y por el Tribunal Supremo de Estados Unidos en el caso de *Spielman Motor Co.* v. *Dodge,* 295 U. S. 89, 95, cuando se expresó por voz del Juez Presidente Sr. Hughes en esta forma:

"La regla general es que la equidad no intervendrá para impedir que se ponga en vigor un estatuto penal aunque éste sea inconstitucional. *Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497, 500. Véanse también, *In re Sawyer,* 124 U. S. 200, 209–211; *Davis &*

*Farnum Manufacturing Co.* v. *Los Angeles,* 189 U. S. 207, 217.
Para justificar tal intervención tienen que concurrir circunstancias
extraordinarias y una demostración clara de que el injunction es
necesario a fin de proteger adecuadamente derechos constitucionales.
Véase *Terrace* v. *Thompson,* 263 U. S. 197, 214; *Packard* v. *Banton,*
264 U. S. 140, 143; *Tyson* v. *Banton,* 273 U. S. 418, 428; *Cline* v.
*Frink Dairy Co.,* 274 U. S. 445, 452; *Ex parte Young,* 209 U. S. 123,
161–162 . . . .

"La petición radicada por el apelante no llenó este requisito. El
apelante alegó que el fiscal de distrito había solicitado de un magis-
trado de la ciudad de Nueva York expidiera un mandamiento orde-
nando la comparecencia del apelante, para hacer una investigación
de una queja formulada contra él por violación de las disposiciones
del 'Código de Ventas de Automóviles', con el fin de presentar una
acusación contra él por dicha violación. Alegó que el fiscal de distrito
se proponía, a menos que fuera impedido, incoar un procedimiento
criminal contra él. La ley estatal disponía que cualquier violación
de las disposiciones del código sería un 'misdemeanor' castigable con
una multa que no excediera de $500 por cada delito. La petición
contenía alegaciones generales de daño irreparable y de que el peti-
cionario sería privado de sus "derechos, libertades, propiedades e
inmunidades' sin el debido procedimiento de ley, si el estatuto era
puesto en vigor. Pero la petición no alegó hechos suficientes para
justificar tales conclusiones, *que por sí eran insuficientes.* La petición
alegó que el apelante tenía un negocio grande de compra y venta
de automóviles pero el estatuto no prohibía la continuación de dicho
negocio, *y la petición no contenía hechos que demostraran que los
requisitos específicos del código, que estaban en controversia interven-
drían de tal forma en el negocio que se exigiría el remedio de la
equidad. Aparte de la declaración de conclusiones generales y no
basadas en hechos, lo que presentaba esta petición era el caso corriente
de un procedimiento criminal que le daría al apelante amplia oportu-
nidad para la reclamación de sus derechos."* (Bastardillas nuestras.)

En el caso de autos la demanda no contiene alegación al-
guna de que el negocio del demandante no podría continuar
funcionando si en lugar 'de mujeres él hubiera empleado
hombres para trabajar después de las diez de la noche, mien-
tras se resolvía, en el caso criminal, si la ley era aplicable
o no a las mujeres que él emplea como "telefonistas". Nada
hay en la descripción del negocio del demandante que indi-

que que sea una condición inevitable para su éxito económico que deban ser mujeres y no hombres los que deban emplearse para trabajar después de las diez de la noche. Cualquier proceso criminal en contra del demandante no conlleva como consecuencia la destrucción de su negocio. Los hechos alegados no son suficientes para demostrar que el cumplimiento por el demandante de los requisitos exigidos por la ley le ocasionarían daños irreparables.

■ Tampoco la multiplicidad de procesos criminales que alega el apelante a que sería sometido es, por sí sola, suficiente para justificar la expedición de un auto de injunction en este caso. Aún cuando una corte de equidad puede intervenir para evitar una multiplicidad de procedimientos perjudiciales a los derechos de propiedad, como regla general, no intervendrá para impedir procesos criminales por el solo hecho de que con ello se evite una multiplicidad de acciones. En 28 Am. Jur., *Injunctions,* sec. 235, se expone la regla en esta forma: "Está bien establecido que si el demandante puede evitar procesos subsiguientes desistiendo de cometer el acto ilegal imputado mientras se substancia el primer proceso, la equidad rehusará intervenir para prohibir alegadas amenazas de procesos por subsiguientes violaciones, por el hecho de que se alegue que el injunction sea necesario para evitar una multiplicidad de acciones."

En el caso de *Sullivan* v. *San Francisco Gas & Electric. Co.,* 83 P. 156, se aplicó la doctrina diciéndose:

"No conocemos ningún principio de jurisprudencia que autorice a una corte de equidad, por el hecho de que evitará una multiplicidad de acciones o que evitará una intervención perjudicial con el negocio del demandante, a investigar en cuanto a la veracidad de cargos criminales que hayan sido o puedan ser formulados en su contra, a oír la prueba en cuanto a su culpabilidad o inocencia, a determinar con anterioridad a la decisión de las cortes criminales legalmente establecidas la cuestión de su culpabilidad o inocencia en cuanto a las denuncias ya formuladas, y de su probable culpabilidad o inocencia en cuanto a futuras denuncias y, de resolverse en su favor, anticiparse a la acción de las cortes de ley y prohibir por injunction

el cumplimiento de un estatuto válido y constitucional en su contra por el único fundamento de que no existe suficiente prueba de su culpabilidad...La contestación a la solicitud del demandante es que el remedio de éste en las cortes de ley es completo y adecuado.''

Lo mismo podemos decir en este caso. El demandante tiene su remedio en ley. Si es procesado puede demostrar que la ley regulando el trabajo de mujeres no es aplicable a las que él califica como "telefonistas", cuestión sobre la cual no expresamos opinión alguna, pero no puede pretender hacerlo, por anticipado, amparándose en un remedio de equidad con el fin de evitar los procedimientos criminales.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Travieso no intervino.