EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br>    Peticionario<br><br>        v.<br><br><br>David Méndez Rivera<br>    Recurrido | Certiorari<br><br>2013 TSPR 26<br><br>188 DPR ____ |

Número del Caso: CC-2012-139


Fecha: 1ro de marzo de 2013


Tribunal de Apelaciones:

        Región Judicial de Ponce, Panel VII

Oficina del Procurador General:

        Lcdo. Luis Román Negrón
        Procurador General

        Lcda. Eva Soto Castello
        Procurador General Auxiliar

Abogado de la Parte Recurrida:

        Lcda. Zinia I. Acevedo Sánchez



Materia: Sentencia y Opinión de Conformidad


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                   CC-2012-139      Certiorari

David Méndez Rivera

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 1 de marzo de 2013.

Atendida la *Petición de Certiorari*, se expide el auto y se revoca la decisión dictada por el Tribunal de Apelaciones. Además, se ordena la devolución del caso al Tribunal de Primera Instancia para que, con la prioridad que la controversia amerita, señale en el calendario una fecha inmediata para la celebración del juicio contra el recurrido David Méndez Rivera.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo emitió Opinión de Conformidad a la cual se unen los Jueces Asociados señores Rivera García, Feliberti Cintrón y Estrella Martínez. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

                         Aida Ileana Oquendo Graulau
                       Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.                          CC-2012-139     Certiorari

David Méndez Rivera

    Recurrido


Opinión de Conformidad emitida por el Juez Asociado señor Kolthoff Caraballo a la cual se unen los Jueces Asociados señores Rivera García, Feliberti Cintrón y Estrella Martínez


San Juan, Puerto Rico, a 1 de marzo de 2013.

En el 2009 atendimos el caso Pueblo v. Rivera Santiago, 176 D.P.R. 559 (2009), en el cual este Tribunal resolvió que no procede la desestimación de una causa criminal por violación al derecho a juicio rápido, al amparo de la R. 64 (n)(4) de Procedimiento Criminal,[1] así como que no constituye una violación al debido proceso de ley cuando el último día de los términos no están presentes -al momento de la selección del jurado- todos los testigos anunciados por el Ministerio Público y a pesar de esto la Fiscalía expresa su disponibilidad

_____

[1] 34 L.P.R.A. Ap. II, R. 64(n)(4).

para comenzar el juicio con los testigos que estuviesen presentes en sala.

Como vemos, la norma expuesta en Pueblo v. Rivera Santiago, *supra*, se dio en el contexto de un juicio por jurado. En el día de hoy esta Curia aplica lo resuelto en tal precedente a un caso por tribunal de derecho. Estoy conforme con la determinación de la mayoría de este Foro. Me explico.

I

Los hechos del caso son los siguientes. El 17 de diciembre de 2010 se presentaron dos denuncias contra David Méndez Rivera (recurrido Méndez Rivera) por hechos ocurridos el 12 de diciembre de 2010; una de éstas fue por el delito de asesinato en segundo grado[2] y la otra por el delito de portación y uso de arma blanca.[3] El mismo 17 de diciembre se determinó causa para arresto por ambos delitos graves y el recurrido Méndez Rivera quedó libre bajo fianza.

La vista preliminar fue el 8 de febrero de 2011 y en ésta no se encontró causa probable para acusar al recurrido Méndez Rivera. Inconforme, el Ministerio Público solicitó una vista preliminar en alzada, la cual se señaló para el 15 de marzo de 2011. No obstante, dicha vista se aplazó hasta el 4 de abril de 2011[4] y en esa

_____

[2] Art. 106 del Código Penal de Puerto Rico de 2005, 33 L.P.R.A. sec. 4734.

[3] Art. 5.05 de la Ley de Armas del 2000, 25 L.P.R.A. sec. 458d.

[4] Según el Sr. David Méndez Rivera (recurrido Méndez Rivera), la vista preliminar en alzada no se efectuó el 15 de marzo de 2011 debido a que

ocasión sí se halló causa probable para acusar por la portación y uso de arma blanca, y por asesinato atenuado[5] en lugar de asesinato en segundo grado. Entonces, la Defensa solicitó reconsideración en sala bajo el argumento de que la prueba de cargo establecía una legítima defensa, mientras el Ministerio Público argumentó lo contrario. Luego de escuchar a ambas partes, el juzgador se reiteró en la determinación de causa probable para acusar por ambos delitos. Además, se señaló la lectura de acusación para el 25 de abril de 2011 y el juicio para el 8 de junio de 2011. Así, el 11 de abril de 2011 el Ministerio Público formuló las acusaciones por los mencionados delitos.

Según pautada, el 25 de abril de 2011 se celebró la vista de lectura de acusación y allí se ratificó la fecha del juicio para el 8 de junio de 2011.[6] El 5 de mayo de 2011 la Defensa presentó una moción para el descubrimiento de prueba al amparo de la Regla 95 de Procedimiento Criminal,[7] en la cual solicitó copia del certificado de antecedentes penales del menor occiso.

Llamado el caso para el juicio en su fondo el 8 de junio de 2011 (primer señalamiento), la Fiscal a cargo del

---

no compareció la prueba del Ministerio Público. Véase Escrito en cumplimiento de orden presentado por el recurrido, pág. 3.

[5] Art. 108 del Código Penal de Puerto Rico de 2005, 33 L.P.R.A. sec. 4736.

[6] Desde la vista de lectura de acusación el caso fue atendido en la Sala 405 del Tribunal de Primera Instancia, Sala Superior de Ponce, presidida en ese momento por el Hon. Reinaldo Santiago Concepción.

[7] 34 L.P.R.A. Ap. II, R. 95.

caso no pudo comparecer debido a que se encontraba de turno y estaba investigando escenas en diversos casos; junto a ella estaba el agente que preparó la denuncia y quien era uno de los testigos de cargo. En esa vista, el Juez hizo constar que los términos de juicio rápido vencían en agosto de 2011 y que su sala estaría en receso del 10 de junio al 12 de julio de 2011. Asimismo, el Juez explicó que el Ministerio Público debía cumplir con el descubrimiento de prueba en el término de 20 días, a vencerse el 28 de junio de 2011. El juicio fue reseñalado para el 20 de julio de 2011.

El 16 de junio de 2011 el Ministerio Público contestó la solicitud de descubrimiento de prueba de la Defensa, pero objetó la petición del récord de faltas del menor occiso fundamentándose en la confidencialidad de dicho expediente. Así las cosas, el 30 de junio de 2011 la Defensa solicitó que el tribunal de instancia le ordenara al Ministerio Público proveer copia del mencionado récord, ello para el contrainterrogatorio efectivo de los testigos de cargo y la adecuada defensa del acusado.[8]

Durante el señalamiento de juicio el 20 de julio de 2011 (segundo señalamiento), las partes argumentaron sobre la entrega del expediente de faltas del menor occiso, mas el foro de instancia ordenó que el Ministerio Público hiciera las gestiones para la entrega de ese

---

[8] Apéndice de la Petición de *certiorari*, pág. 62.

récord a la Defensa.[9] Se reseñaló el juicio para el 28 de julio de 2011. En el ínterin, mediante moción urgente, el Ministerio Público informó al tribunal de instancia que la Procuradora de Menores le había indicado que no podía entregar el expediente porque era confidencial.

Llegado el 28 de julio de 2011 (tercer señalamiento), el Ministerio Público solicitó término para presentar una moción de inhibición contra el Juez que atendía el caso. El Ministerio Público entendió que existía justa causa para suspender la vista señalada, mientras la Defensa se opuso a ello alegando que desde la lectura de la acusación se conocía quién era el Juez que atendería el caso. Así, el foro de instancia concedió hasta la tarde de ese día para que el Ministerio Público presentara la solicitud de inhibición y cinco días para que la Defensa replicara a ésta. La conferencia con antelación a juicio fue señalada para el 5 de agosto de 2011. Según acordado, esa tarde el Ministerio Público presentó la moción de inhibición.

Llamado el caso para la conferencia con antelación a juicio el 5 de agosto de 2011 (cuarto señalamiento), el Ministerio Público informó que aunque estaba preparado para comenzar el caso comoquiera quedaba pendiente la moción de inhibición. Por su parte, la Defensa indicó que no estaba preparada para ver el caso debido a que el Ministerio Público aún no le había entregado unos documentos, por lo que hizo constar su preocupación en

---

[9] Para esa fecha, nuevamente estuvo ausente el agente que preparó la denuncia, ya que se encontraba en licencia por enfermedad.

cuanto a los términos de juicio rápido y mencionó que no estarían renunciando a los mismos. El foro de instancia reseñaló la conferencia con antelación al juicio para el 17 de agosto de 2011. La Defensa presentó su oposición a la moción de inhibición el 10 de agosto de 2011 y al día siguiente el tribunal de instancia declaró no ha lugar la solicitud de inhibición presentada por el Ministerio Público.

El 17 de agosto de 2011 (quinto señalamiento), el foro de instancia reiteró su orden para que el Ministerio Público entregara a la Defensa el expediente de faltas del menor occiso. Asimismo, las partes argumentaron sobre los términos de juicio rápido y el Juez resolvió que la interposición de la moción de inhibición constituyó justa causa para que el foro no se pronunciara.[10] En esa ocasión, la Defensa informó que vería el caso por tribunal de derecho. La vista en sus méritos fue reseñalada para los días 23, 24 y 26 de agosto de 2011. Posteriormente, el Ministerio Público solicitó reconsideración de la orden para la entrega del mencionado expediente de faltas, pero dicha petición fue declarada no ha lugar.

Llamada la vista en su fondo el 23 de agosto de 2011 (sexto señalamiento), las partes discutieron nuevamente sobre la confidencialidad del récord de faltas de un menor. No obstante, el Juez reiteró su orden de que el

---

[10] Apéndice de la Petición de *certiorari*, pág. 94.

Ministerio Público realizara las gestiones para la entrega de dicho récord. Además, la Defensa planteó que ese día (23 de agosto de 2011) era el último día de los términos y que había un incumplimiento reiterado del Ministerio Público al no entregar el expediente solicitado, por lo que solicitó la desestimación del caso. El Ministerio Público informó que estaba preparado para comenzar la vista señalada, pero la Defensa indicó que quería "tener el beneficio del récord solicitado" antes de iniciar la vista.[11] Así, el foro de instancia expuso que "se dará un último señalamiento como último día de términos extendidos, por razón del incumplimiento de las órdenes del Tribunal por parte del Ministerio Público",[12] por lo que reseñaló el caso para el 26 de agosto de 2011.

Una vez se obtuvo la autorización de la Sala de Asuntos de Menores de Ponce, el Ministerio Público entregó el expediente de faltas del menor occiso a la Defensa el 25 de agosto de 2011. Llegado el 26 de agosto de 2011 (séptimo señalamiento), el Juez informó que -por orden administrativa- se dispuso que no se atenderían los casos citados para esa tarde en ese Centro Judicial, por circunstancias que no son pertinentes reseñar. Así, la vista en su fondo fue reseñalada para los días 17 al 21 de octubre de 2011. En esa ocasión, el Ministerio Público se opuso al nuevo señalamiento e indicó que estaba preparado para ver el caso. Por su parte, la Defensa no expresó

---

[11] Apéndice de la Petición de *certiorari*, pág. 104.

[12] Íd.

oposición a la nueva fecha y estipuló el testimonio de un testigo de cargo que no estaría presente para el nuevo señalamiento.

Llegada la fecha para la vista en los méritos, el 17 de octubre de 2011, tanto la Defensa como el Ministerio Público informaron que estaban preparados para comenzar la vista.[13] Sin embargo, lo cierto es que el Ministerio Público solo contaba en sala con seis de los catorce testigos anunciados, aunque el testimonio de uno de ellos ya se había estipulado.[14]

En vista de lo anterior, la Defensa solicitó la desestimación al amparo de la R. 64(n)(4) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64(n)(4), a lo que el Ministerio Público replicó y ratificó que podía ver la vista con los testigos presentes. Evaluados los argumentos de las partes, el foro de instancia declaró con lugar la petición de desestimación. Insatisfecho, el Ministerio Público pidió reconsideración en sala

---

[13] Para esa fecha, el caso era atendido en la Sala 506 presidida por el Hon. Pedro Saldaña, ello conforme a la orden emitida el 22 de septiembre de 2011 por la Hon. Carmen Otero Ferreiras (Jueza Coordinadora de Asuntos de lo Criminal en el Centro Judicial de Ponce).

[14] La situación con los testigos no presentes fue la siguiente: (1) el patólogo forense Javier Serrano no estaba en sala, pero estaba disponible "on call"; (2) el agente Gaspar Sánchez (quien preparó la denuncia contra el recurrido Méndez Rivera) estaba de vacaciones hasta finales de octubre de 2011 y así lo informó al tribunal de instancia mediante moción; (3) el investigador forense Ashmin Irizarry estaba en licencia por paternidad y estaría disponible la semana próxima; (4) el Sr. Marc Anthony Colón Escobar (hermano del occiso) no compareció a la vista, por lo que el foro de instancia ordenó su arresto; (5) el Sr. Edwin Cáliz Lugo estaba en licencia militar; (6) la seróloga Amedaris Cordero González estaba de vacaciones hasta finales de octubre de 2011; (7) la seróloga Mariel Candelario Gorbea se encontraba en un adiestramiento e informó que estaría disponible para presentarse en sala; y (8) como señalamos, el testimonio del agente Carlos Cabán Olmeda fue estipulado.

fundamentándose en que no se establecieron los requisitos para la desestimación (entiéndase los criterios para evaluar las reclamaciones de violación al derecho a juicio rápido). Así las cosas, el tribunal de instancia mantuvo su determinación basándose en que "por lo menos tres de los testigos anunciados no estarán disponibles en toda la semana y que se había seleccionado este tiempo para ver la vista como último día de términos extendidos".[15]

Aún en desacuerdo con la decisión del foro de instancia, el Estado -representado por el Procurador General- presentó un recurso de *certiorari* ante el Tribunal de Apelaciones el 15 de noviembre de 2011. En dicho recurso, el Procurador General planteó que el foro de instancia erró, como cuestión de derecho, al desestimar el caso en virtud de la R. 64(n)(4) de Procedimiento Criminal, *supra*, toda vez que el Ministerio Público estaba preparado para comenzar el juicio. Así, el 18 de enero de 2012 ese foro apelativo denegó la expedición del auto al concluir que el tribunal de instancia no abusó de su discreción al desestimar los cargos al amparo de la mencionada regla.[16] Inconforme aún, el Procurador General recurrió ante esta Curia el 22 de febrero de 2012 y señaló la comisión del siguiente error:

> **Los tribunales inferiores erraron al concebir que: (1) el 17 de octubre de 2011 era el último día hábil de los términos de juicio rápido que**

---

[15] Véase Apéndice de la Petición de *certiorari*, pág. 44. Asimismo, el foro de instancia advirtió al acusado sobre la posibilidad de presentar los casos nuevamente conforme a la R. 67 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 67.

[16] Esa determinación fue notificada el 23 de enero de 2012.

se establecen en la Regla 64(n)(4) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; y (2) era una exigencia del debido proceso de ley que todos los testigos anunciados por el Ministerio Público estuvieran presentes al momento de iniciar el juicio.

Mediante resolución de 27 de abril de 2012, este Tribunal concedió término al recurrido Méndez Rivera –representado por la Sociedad para Asistencia Legal (S.A.L.)– para que mostrara causa por la cual no se debía revocar la decisión del Tribunal de Apelaciones. Luego de concederle prórroga, el recurrido Méndez Rivera presentó su escrito en cumplimiento de orden el 5 de junio de 2012.

II

El Art. I, Sec. 2 de nuestra Constitución establece que el Gobierno de Puerto Rico "tendrá forma republicana y sus Poderes Legislativo, Ejecutivo y Judicial… estarán igualmente subordinados a la soberanía del pueblo de Puerto Rico".[17] Ello significa que el andamiaje del Gobierno de Puerto Rico está cimentado en el principio básico de la separación de poderes entre esas tres ramas.[18] De esa forma, la Constitución de Puerto Rico sigue el modelo federal de separación de poderes, así como las atribuciones particulares de poderes a las ramas de gobierno aunque con algunas divergencias.[19]

---

[17] Art. I, Sec. 2, Const. E.L.A., L.P.R.A., Tomo I.

[18] Pueblo v. Rivera Santiago, 176 D.P.R. 559, 577 (2009); Silva v. Hernández Agosto, 118 D.P.R. 45, 57 (1986).

[19] Véase J.J. Álvarez González, Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 237.

Como hemos indicado en otras ocasiones, el principio de separación de poderes busca proteger la independencia de cada rama del gobierno y salvaguardar la libertad de los individuos frente al peligro de la acumulación de poder en una sola rama.[20] Es por medio de dicho principio que se delimitan los contornos de los poderes de las tres ramas de gobierno para así evitar la concentración indebida de poderes y promover la mayor eficiencia en el funcionamiento de nuestro sistema de gobierno.[21] Conforme a la norma general, según reiteramos en Pueblo v. Rivera Santiago,[22] la función judicial sólo puede llevarse a cabo por la Rama Judicial, así como las labores no judiciales deben ser atendidas por las otras ramas de gobierno.[23]

En lo que respecta al Poder Judicial, en el caso normativo Santa Aponte v. Srio. del Senado[24] expresamos -citando a The Federalist, Núm. 78- que corresponde a los tribunales la tarea de interpretar las leyes y la Constitución.[25] Incluso, hemos reafirmado que esa función de interpretación es "un atributo indelegable de la Rama

---

[20] Véanse: Clase A, B y C v. PRTC, 183 D.P.R. 666, 681 (2011); Colón Cortés v. Pesquera, 150 D.P.R. 724, 750 y 752 (2000).

[21] Clase A, B y C v. PRTC, supra; Nogueras v. Hernández Colón, 127 D.P.R. 405, 426-427 (1990).

[22] 176 D.P.R. 559, 577 (2009).

[23] Véase, además, Colón Cortés v. Pesquera, supra, pág. 752.

[24] 105 D.P.R. 750, 760 (1977).

[25] Véanse: Pueblo v. Rivera Santiago, supra, pág. 579; Olmo Nolasco v. Del Valle Torruella, 175 D.P.R. 464, 470 (2009); Colón Cortés v. Pesquera, supra, pág. 754; Silva v. Hernández Agosto, supra, pág. 54.

Judicial".[26]  Así, pues, la facultad de interpretación que se le ha delegado al Poder Judicial "es consustancial con el juicio discrecional que puede ejercer para resolver controversias que lleguen ante su consideración".[27] En sinnúmero de ocasiones hemos hecho referencia a que el concepto "discreción" significa tener poder para decidir en una u otra forma, es decir para seleccionar entre uno o varios cursos de acción.[28]  No obstante, queda claro que en el ámbito judicial la discreción no debe hacer abstracción del resto del Derecho.[29]

Asimismo, hemos reiterado que el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente unido al concepto de la razonabilidad, pues la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera.[30]  Sin embargo, es fundamental tener presente las expresiones que hiciéramos hace más de cuatro décadas en Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964), al advertir que "[n]ingún Tribunal de Justicia posee discreción absoluta".  En particular, allí indicamos que

---

[26] Colón Cortés v. Pesquera, *supra*, pág. 754; Magee v. Alberro, 126 D.P.R. 228, 237 (1990); Figueroa Ferrer v. E.L.A., 107 D.P.R. 250, 277 (1978).

[27] Pueblo v. Rivera Santiago, *supra*, pág. 580.

[28] García v. Asociación, 165 D.P.R. 311, 321 (2005); Pueblo v. Ortega Santiago, 125 D.P.R. 203, 211 (1990).

[29] IG Builders et al. v. BBVAPR, res. el 4 de abril de 2012, 2012 T.S.P.R. 66; HIETEL v. PRTC, 182 D.P.R. 451, 459 (2011); Torres Martínez v. Torres Ghigliotty, 175 D.P.R. 83, 98 (2008).

[30] Véanse: Pueblo v. Hernández Villanueva, 179 D.P.R. 872, 890-891 (2010); Pueblo v. Ortega Santiago, *supra*, pág. 211; Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964).

"... cualquier delegación de poder legislativo concediendo discreción absoluta, resultaría inconstitucional, pues ello equivaldría a una delegación *in toto* del poder legislativo, actuación contraria a los cánones constitucionales de una democracia".[31]

Claro está, como sabemos, es una norma firmemente establecida que de ordinario los tribunales apelativos no debemos intervenir con el ejercicio de la discreción de los foros de instancia, a menos que se demuestre que hubo un craso abuso de discreción, se actuó con perjuicio o parcialidad o se erró en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[32]

Por su parte, conforme al mandato constitucional, el Poder Ejecutivo se ejerce por el Gobernador de Puerto Rico, quien tiene el deber de cumplir y hacer cumplir las leyes.[33]  Como parte de sus atribuciones, el Gobernador tiene la facultad de nombrar -con el consejo y consentimiento del Senado- los Secretarios de Gobierno de forma tal que le asistan en el ejercicio del Poder Ejecutivo.  Uno de ellos es el Secretario de Justicia, quien funge como el principal funcionario de ley y orden del Gobierno de Puerto Rico, y quien tiene a su cargo promover el cumplimiento y ejecución de la ley.[34]

---

[31] Pueblo v. Sánchez González, *supra*, pág. 200.  Véase, además, Pueblo v. Marrero Ramos, Rivera López, 125 D.P.R. 90, 92 (1990).

[32] Trans-Oceanic Life Ins. v. Oracle Corp., 184 D.P.R. 689, 709 (2012); Lluch v. España Service Sta., 117 D.P.R. 729, 745 (1986).

[33] Art. IV, Secs. 1 y 4, Const. E.L.A., L.P.R.A., Tomo I.

[34] Art. IV, Secs. 5 y 6, Const. E.L.A., L.P.R.A., Tomo I.

En varias ocasiones hemos expresado que nuestro ordenamiento jurídico ha delegado en el Poder Ejecutivo el deber de implantar las leyes penales.[35] En particular, la Ley Orgánica del Departamento de Justicia establece que el Secretario de Justicia es el representante legal del Pueblo de Puerto Rico en los procesos criminales y que ejercerá tal función personalmente o por medio de los fiscales.[36] En nuestra jurisdicción, como regla general, la facultad y responsabilidad de investigar, acusar y procesar alegada conducta constitutiva de delito público recae en la persona del Secretario de Justicia y de los fiscales adscritos al Departamento de Justicia.[37] Es decir, a esos funcionarios les corresponde investigar los hechos delictivos, decidir a quién acusar y procesar criminalmente, y por cuál delito se encausará, esto dentro de una amplia discreción en el descargo de sus funciones.[38] Claro está, esa discreción, como ocurre con la judicial, tampoco es absoluta o irrestricta; está sujeta a

---

[35] Pueblo v. Castellón, 151 D.P.R. 15, 24 (2000); Pueblo v. Dávila Delgado, 143 D.P.R. 157, 169 (1997); Pueblo v. Quiñones, Rivera, 133 D.P.R. 332, 338 (1993).

[36] Art. 4, inciso (1), de la Ley Núm. 205-2004, mejor conocida como la Ley Orgánica del Departamento de Justicia, 3 L.P.R.A. sec. 292a(1).

[37] Pueblo v. Pérez Casillas, 126 D.P.R. 702, 710 (1990); Pueblo v. González Malavé, 116 D.P.R. 578, 584 (1985). Véase, también, O. E. Resumil de Sanfilippo, Derecho Procesal Penal, Orford, Equity Publishing Co., 1990, T. 1, Secs. 5.10 y 5.13, págs. 85 y 90.

[38] Pueblo v. Castellón, supra, págs. 24-25; Pueblo v. Dávila Delgado, supra, pág. 170.

limitaciones de carácter constitucional y de política pública.[39]

Como señalamos en Pueblo v. Rivera Santiago, 176 D.P.R. 559, 579 (2009), esa determinación del Ministerio Público de comenzar el proceso criminal contra un ciudadano implica la consideración de diversos factores, siendo la suficiencia de la evidencia el más común e importante. Sin embargo, allí aclaramos que no se puede establecer de forma categórica qué cantidad de evidencia se requiere para justificar la determinación de la Fiscalía de acusar y procesar criminalmente a un sospechoso de delito. Añadimos -citando a los tratadistas LaFave, Israel y King- que "como medida práctica, el fiscal deberá poseer evidencia admisible que denote alta probabilidad de culpabilidad, lo que dependerá de cada caso".[40] Así, pues, como expresamos en Pueblo v. Rivera Santiago, supra, pág. 579, es el Estado el que decide si puede probar su caso con la evidencia que tiene. Al respecto, añadimos que "el Ministerio Público tiene la potestad de procesar al acusado, indistintamente de la cantidad de prueba que finalmente decida ofrecer, si entiende que puede prevalecer". Íd.

### III

En su escrito apelativo, el Procurador General incluyó un señalamiento de error compuesto por dos partes.

---

[39] Pueblo v. Rivera Santiago, supra, pág. 578; Pueblo v. Martínez Acosta, 174 D.P.R. 275, 282 (2008); Pueblo v. Dávila Delgado, supra, págs. 170-171; Pueblo v. Pérez Casillas, supra, pág. 712.

[40] Pueblo v. Rivera Santiago, supra, pág. 579.

No obstante, entiendo que sólo procede atender lo concerniente a si constituía una exigencia del debido proceso de ley el que todos los testigos anunciados por el Ministerio Público estuviesen presentes al momento de comenzar el juicio por tribunal de derecho, ya que esto dispone del caso en su totalidad.

Por un lado, el Procurador General expuso que el foro de instancia erró al desestimar, en virtud de la R. 64 (n)(4) de Procedimiento Criminal,[41] las acusaciones contra el recurrido Méndez Rivera esto a pesar de que el Ministerio Público expresó su interés de comenzar el juicio con la prueba de cargo presente en sala. Asimismo, planteó que el recurrido Méndez Rivera no alegó perjuicio específico de comenzar el juicio sólo con los testigos presentes en sala, y tampoco demostró que se hubiese afectado su capacidad de defenderse y de producir prueba a su favor.[42] A su vez, indicó que el Tribunal de Apelaciones se equivocó al denegar la expedición del auto de *certiorari*, ya que de esa forma ratificó el curso de acción erróneo que tomó el foro de instancia. Así, pues, nos solicitó la expedición del auto de *certiorari*, la revocación de la decisión del Tribunal de Apelaciones y la devolución del caso al tribunal de instancia para la celebración del juicio contra el recurrido Méndez Rivera.

---

[41] 34 L.P.R.A. Ap. II, R. 64(n)(4).

[42] Véase Petición de *certiorari*, pág. 22.

Por su parte, S.A.L. argumentó que este caso es distinguible de <u>Pueblo v. Rivera Santiago</u>, 176 D.P.R. 559 (2009), por lo que no aplica la norma allí esbozada. En particular, señaló que en aquel caso: (1) las acusaciones fueron desestimadas en un primer proceso penal luego de más de dos años de dilaciones motivadas por ambas partes; y (2) la razón para señalar el juicio en una fecha fuera de los términos fue la incomparecencia de la prueba de cargo y que ante ello la Defensa no se opuso a que esa nueva fecha se considerara como el último día de los términos. S.A.L. expuso que en el presente caso "la Defensa no se allanó a que el juicio fuera señalado fuera de los términos, sino que fue una determinación del Tribunal, a pesar de lo que según la jurisprudencia aplicable lo que procedía era la desestimación".[43] De esa forma, S.A.L. nos solicitó que denegáramos la expedición del recurso de *certiorari* presentado por el Procurador General.

Repasando los hechos del caso de epígrafe, es importante recordar que <u>el 17 de octubre de 2011 tanto la Defensa como el Ministerio Público expresaron que estaban preparados para comenzar la vista en sus méritos</u> y así surge del Acta preparada por el foro de instancia.[44]

---

[43] Véase Escrito en cumplimiento de orden presentado por S.A.L., pág. 18.

[44] El Acta lee de la siguiente manera:
"La Defensa informa que se encuentra preparada.
El Ministerio Público expresa que hay seis testigos presentes, que puede comenzar la vista con estos, que el patólogo Javier Serrano está disponible, que el Agte. Gaspar Sánchez informó en la última vista que iba a estar de vacaciones fuera del país…".

En particular, el Ministerio Público informó que había seis testigos de cargo presentes en sala y que podía comenzar la vista con éstos. Luego, a pesar de que indicó que estaba preparada para comenzar la vista, la Defensa pidió la desestimación de las acusaciones en virtud de la R. 64(n)(4) de Procedimiento Criminal, *supra*, y argumentó al respecto. Mientras, el Ministerio Público replicó y nuevamente expresó que podía comenzar la vista con los testigos presentes en sala. Sin embargo, el tribunal de instancia no permitió que el Ministerio Público comenzara el desfile de prueba con los testigos presentes y desestimó las acusaciones. Más adelante, sostuvo su determinación cuando se le pidió una reconsideración en sala y fundamentó su posición en que "por lo menos tres de los testigos anunciados no estarán disponibles en toda la semana y que se había seleccionado este tiempo para ver la vista como último día de términos extendidos".[45] En revisión, esa determinación fue avalada por el Tribunal de Apelaciones cuando dicho foro se negó a expedir el auto de *certiorari* presentado por el Procurador General.

Luego de un análisis de los hechos del caso, entiendo que procede extender a los juicios por tribunal de derecho la norma pautada en Pueblo v. Rivera Santiago, *supra*. Específicamente me refiero a que no procede la desestimación de una causa criminal por violación al

---

Apéndice de la Petición de *certiorari*, pág. 42.

[45] Apéndice de la Petición de *certiorari*, pág. 44.

derecho a juicio rápido, al amparo de la R. 64 (n)(4) de Procedimiento Criminal, *supra*, así como que no constituye una violación al debido proceso de ley cuando el último día de los términos no están presentes -al momento del inicio del juicio- todos los testigos anunciados por el Ministerio Público y a pesar de esto la Fiscalía expresa su disponibilidad para comenzar el juicio con los testigos que estuviesen presentes en sala.

En el caso que nos ocupa, la decisión del tribunal de instancia de desestimar las acusaciones contra el recurrido Méndez Rivera fue desacertada y constituyó un abuso de discreción, pues dicho foro se inmiscuyó en la amplia discreción que tiene el Ministerio Público de acusar y procesar al acusado. En particular, el tribunal de instancia interfirió con la potestad que posee el Ministerio Público de presentar su prueba, en este caso los testigos de cargo, sin importar la cantidad que fuere. Como mencionamos en <u>Pueblo v. Rivera Santiago</u>, *supra*, pág. 579, el Estado -a través de los fiscales- es el que decide si puede probar su caso con la evidencia que tiene, ya que "el Ministerio Público tiene la potestad de procesar al acusado, indistintamente de la cantidad de prueba que finalmente decida ofrecer, si entiende que puede prevalecer". *Íd.* Asimismo, el Tribunal de Apelaciones erró al denegar la expedición del auto de *certiorari*, ya que de esa forma convalidó la actuación errónea del tribunal de instancia.

Considero que el foro de instancia debió permitirle al Ministerio Público comenzar el juicio con la prueba que tenía en ese momento, en este caso los seis testigos de cargo que se encontraban presentes en sala. Claro está, en circunstancias como las del caso de autos, el Ministerio Público debe ser consciente del riesgo y la posible consecuencia de iniciar el juicio sólo con la prueba que tiene disponible en ese momento. Específicamente que, si llegado el momento le faltara algún testigo por presentar, no podrá pedir que se suspendan los procedimientos para continuar en otra ocasión, en la expectativa de que por fin comparezca el resto de su prueba. Ello debe ser así, siempre y cuando no medie justa causa en la incomparecencia del o los testigos. En esa instancia, de no ser suficiente la evidencia presentada para probar la culpabilidad del acusado más allá de duda razonable, el tribunal deberá absolver, con la obvia consecuencia –distinto a una primera desestimación por la Regla 64(n)– de que el Estado ya no podría volver a presentar la misma acusación.[46]

En Pueblo v. Rivera Santiago, *supra*, págs. 585 y 589-590, este Tribunal mencionó que en nuestro ordenamiento jurídico no existe una disposición de ley que requiera la presencia de todos los testigos al momento de comenzar el juicio para la selección del Jurado, así como

---

[46] Esto de ninguna manera implica que si en el curso ordinario y natural del proceso el Ministerio Público no termina el desfile de los testigos presentes ese primer día de la vista, en una continuación no pueda presentar aquellos testigos que se habían anunciado en el pliego acusatorio y que estuvieron ausentes en esa primera ocasión.

tampoco se ha establecido que ello constituya una exigencia del debido proceso de ley para que el proceso sea justo e imparcial. Mucho menos hallamos disposición alguna que establezca ese requisito para los casos por tribunal de derecho.

Cierto es que la presencia -al momento de la juramentación del jurado- de todos los testigos que han de ser presentados durante el juicio tiene implicaciones prácticas importantes: evitar que posteriormente algún jurado informe que tiene conflicto de interés con un testigo a quien no pudo reconocer por no estar presente al momento de la toma del juramento. Sin embargo, tal pragmatismo –además de no aplicar en casos por tribunal de derecho- de por sí no es suficiente. Por eso, y como hemos visto, la norma de Pueblo v. Rivera Santiago, *supra*, se fundamentó en consideraciones discrecionales que le asisten al Ministerio Público, en las cuales, y en virtud de la separación de poderes, los tribunales no deben inmiscuirse.

En vista de lo anterior, entiendo que una vez el Ministerio Público manifestó que estaba preparado para comenzar el juicio, procedía que el foro de instancia decretara el inicio de los procedimientos, pues no podía interferir con la potestad que posee el Ministerio Público de presentar su prueba sin importar la cantidad de testigos de cargo que tuviese en ese momento en sala. Al actuar contrario a esto, el tribunal de instancia abusó de su discreción. De igual forma, el Tribunal de Apelaciones

erró al denegar la expedición del recurso presentado por el Procurador General, pues con ello convalidó el proceder erróneo del foro de instancia.

En conclusión, no procede la desestimación de una causa criminal al amparo de la R. 64 (n)(4) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64(n)(4), así como que no constituye una violación al debido proceso de ley cuando el último día de los términos no están presentes –en un juicio por tribunal de derecho- todos los testigos anunciados por el Ministerio Público y a pesar de esto la Fiscalía expresa su disponibilidad para comenzar el juicio con los testigos que estuviesen presentes en sala.

IV

Por los fundamentos antes expuestos, estoy conforme con la determinación de este Tribunal de expedir el auto de *certiorari* y revocar la decisión recurrida. Asimismo, estoy conforme conque procede la devolución del caso al tribunal de instancia para que, con la prioridad que la controversia amerita, se señale en el calendario una fecha inmediata para la celebración del juicio contra el recurrido David Méndez Rivera.

Erick V. Kolthoff Caraballo
Juez Asociado